IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TOMMY WALKER,

                Plaintiff,

v.

BLACK HORSE CARRIERS INC.,

                Defendant.

No. 08 C 1255

Judge Hibbler

Magistrate Judge Brown

## BLACK HORSE CARRIERS INC.'S ANSWER TO COMPLAINT

Defendant Black Horse Carriers Inc. ("Black Horse") in answer to Plaintiff's Complaint,

states as follows:

### PRELIMINARY STATEMENT

**COMPLAINT ¶ 1:**

This action seeks redress for the violation of rights guaranteed to Plaintiff by 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff seeks mandatory injunctive relief, declaratory relief and damages to redress Defendant's discriminatory employment practices.

**ANSWER:**

Defendant denies that it committed any violation of these civil rights statutes, and that Plaintiff is

entitled to any relief herein.

### JURISDICTIONAL STATEMENT

**COMPLAINT ¶ 2:**

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection and redress deprivation of rights secured by 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**ANSWER:**

Defendant denies that it committed any violation of these civil rights statutes, that Plaintiff is entitled to any relief herein, and that jurisdiction exists pursuant to 28 U.S.C. § 1343(a)(3).

## VENUE

**COMPLAINT ¶ 3:**

Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

**ANSWER:**

Defendant admits that venue is proper in this Court.

## PARTIES

**COMPLAINT ¶ 4:**

Plaintiff, TOMMY WALKER, is an African-American citizen of the United States who resides in the State of Illinois.

**ANSWER:**

Defendant admits.

**COMPLAINT ¶ 5:**

Defendant, BLACK HORSE CARRIERS INC., is a corporation properly recognized and sanctioned by the laws of the State of Illinois. At all times relevant hereto, Defendant has conducted, and continues to conduct, business in the State of Illinois. Defendant is engaged in an industry that affects commerce and is an employer for purposes of 42 U.S.C. § 2000e(b).

**ANSWER:**

Defendant admits.

## PROCEDURE

**COMPLAINT ¶ 6:**

Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on February 15, 2008. The EEOC issued Plaintiff a Notice of Right to Sue on February 25, 2008, which Plaintiff received on February 27, 2008. The Notice of Right to Sue entitles Plaintiff to initiate a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice. Plaintiff has initiated this action within said ninety (90) day period.

CHICAGO/#1763105.1

**ANSWER:**

On information and belief, Defendant admits.

**COUNT I – 42 U.S.C. § 1981 – RETALIATION**

**COMPLAINT ¶ 7:**

Paragraphs one (1) through six (6) are incorporated by reference as if fully set out herein.

**ANSWER:**

Defendant repeats its responses to paragraphs 1–6.

**COMPLAINT ¶ 8:**

Plaintiff began working for Defendant in May 2007 as a Truck Driver.

**ANSWER:**

Defendant admits.

**COMPLAINT ¶ 9:**

Throughout the entirety of his employment with Defendant, Plaintiff has performed to Defendant's reasonable satisfaction at any times material hereto.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 10:**

Beginning in approximately June 2007, Plaintiff placed complaints to Defendant's managerial and supervisory employees, including Ted Buckley, Manager, and Brad Swanson, Supervisor, of the racially harassing and hostile actions of a Caucasian co-worker, Frank Dolatow.

**ANSWER:**

Defendant denies, except it admits that Plaintiff complained about language used by a Caucasian co-worker, Frank Dolatowski.

CHICAGO/#1763105.1

**COMPLAINT ¶ 11:**

Such racially harassing and hostile actions included, but are not limited to:

a.      Repeatedly referencing Plaintiff's and other African-American employee's skin color or calling these individuals a "black ass";

b.      Threatening to burn crosses on an employee's lawn; and

c.      Calling Hispanic employees "spics".

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 12:**

Despite Plaintiff's numerous complaints, Defendant took no substantive action to address his reports and Mr. Dolatow was allowed to continue his harassing and hostile behavior.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 13:**

As Defendant took no action, Frank Dolatow escalated his racially harassing behavior, eventually leading to a physical confrontation in approximately early August 2007 after Dolatow made disparaging remarks about another employee's national origin.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 14:**

Immediately after witnessing the physical altercation arising from Frank Dolatow's discriminatory remarks, Plaintiff placed another complaint to his direct supervisor, Brad Swanson.  In the complaint, Plaintiff reported the racial undertones of the confrontation and specifically requested that as his previous reports were ignored that this be communicated to Defendant's owner.

**ANSWER:**

Defendant denies, except it admits that Plaintiff complained about Frank Dolatowski having an

argument with another employee.

**COMPLAINT ¶ 15:**

Plaintiff engaged in protected conduct under 42 U.S.C. § 1981 based on his opposition to and reporting of Defendant's discriminatory conduct.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 16:**

Rather than address Plaintiff's complaints, following his reports, Defendant began a course of conduct to retaliate against Plaintiff for his protected activity.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 17:**

Following Plaintiff's reports, Defendant transferred Plaintiff from the Nation Pizza to the Fresh Express account.

**ANSWER:**

Defendant admits.

**COMPLAINT ¶ 18:**

In making the transfer, Defendant informed Plaintiff that there were only night shifts available, despite hiring Plaintiff on the premise that he would only be scheduled on day-time hours to allow him to care for his children.

**ANSWER:**

Defendant denies, except it admits that only evening shifts were available at the Fresh Express

account.

**COMPLAINT ¶ 19:**

Defendant further reduced Plaintiff's hours from approximately sixty (60) to seventy (70) hours per week to approximately forty-five (45) hours per week.  This decrease substantially reduced Plaintiff's earnings by about fifty (50) percent.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 20:**

Following the transfer, Defendant began to monitor and scrutinize Plaintiff's activities in a discriminatory manner not afforded to his similarly situated co-workers who did not engage in protected activity. Such monitoring included assigning a truck driver, Ralph, to follow Plaintiff around the facility, spy on him, and record his activities.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 21:**

In addition, while Truck Driver Ralph monitored Plaintiff's behavior he was allowed to harass Plaintiff. Further, in approximately January 2008, Ralph began to inform customers and co-workers that Plaintiff was going to be terminated.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 22:**

On February 6, 2008, Plaintiff reported to his new supervisor on the Fresh Express account, Rick, of the discriminatory treatment he continued to endure. In response, Supervisor Rick asked Plaintiff to meet with him prior to Plaintiff's scheduled shift later that day.

**ANSWER:**

Defendant denies, except it admits that Supervisor Rick Holder requested Plaintiff to meet with

him at Defendant's office prior to the time of Plaintiff's scheduled shift.

**COMPLAINT ¶ 23:**

Before the meeting took place, however, Supervisor Rick called Plaintiff to terminate his employment for the purported reason of tardiness.

**ANSWER:**

Defendant denies, except it admits that Plaintiff never showed up for the meeting.

CHICAGO/#1763105.1

**COMPLAINT ¶ 24:**

In terminating Plaintiff's employment, Defendant bypassed its usual and customary practices and procedures which require that employees receive progressive discipline for tardiness, including verbal and written warnings, none of which Plaintiff received prior to his termination.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 25:**

On information and belief, similarly situated employees who did not engage in protected activity were not subjected to the adverse actions directed against Plaintiff.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 26:**

Any reasons proffered by Defendant for terminating Plaintiff's employment are pretext for retaliating against Plaintiff because of his complaints of racial discrimination and harassment.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 27:**

The aforementioned acts and omissions of Defendant constitute retaliation against Plaintiff based on his opposition to the creation of a harassing, discriminatory, and hostile work environment and have deprived Plaintiff of the enjoyment of all benefits, privileges, terms and conditions of his employment in violation of 42 U.S.C. § 1981.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 28:**

As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

CHICAGO/#1763105.1

**ANSWER:**

Defendant denies.

## COUNT II – TITLE VII – RETALIATION

**COMPLAINT ¶ 29:**

Paragraphs one (1) through fourteen (14) are incorporated by reference as if fully set out herein.

**ANSWER:**

Defendant repeats its responses to paragraph 1–14.

**COMPLAINT ¶ 30:**

Plaintiff engaged in statutorily protected conduct under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e et seq., based on his opposition to and reporting of Defendant's discriminatory conduct.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 31:**

Rather than address Plaintiff's complaints, following his reports, Defendant began a course of conduct to retaliate against Plaintiff for his protected activity.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 32:**

Following Plaintiff's reports, Defendant transferred Plaintiff from the Nation Pizza to the Fresh Express account.

**ANSWER:**

Defendant admits.

CHICAGO/#1763105.1

**COMPLAINT ¶ 33:**

In making the transfer, Defendant informed Plaintiff that there were only night shifts available, despite hiring Plaintiff on the premise that he would only be scheduled on day-time hours to allow him to care for his children.

**ANSWER:**

Defendant denies, except it admits that only evening shifts were available at the Fresh Express account.

**COMPLAINT ¶ 34:**

Defendant further reduced Plaintiff's hours from approximately sixty (60) to seventy (70) hours per week to approximately forty-five (45) hours per week. This decrease substantially reduced Plaintiff's earnings by about fifty (50) percent.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 35:**

Following the transfer, Defendant began to monitor and scrutinize Plaintiff's activities in a discriminatory manner not afforded to his similarly situated co-workers who did not engage in protected activity. Such monitoring included assigning a truck driver, Ralph, to follow Plaintiff around the facility, spy on him, and record his activities.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 36:**

In addition, while Truck Driver Ralph monitored Plaintiff's behavior he was allowed to harass Plaintiff. Further, in approximately January 2008, Ralph began to inform customers and co-workers that Plaintiff was going to be terminated.

**ANSWER:**

Defendant denies.

CHICAGO/#1763105.1

**COMPLAINT ¶ 37:**

On February 6, 2008, Plaintiff reported to his new supervisor on the Fresh Express account, Rick, of the discriminatory treatment he continued to endure.  In response, Supervisor Rick asked Plaintiff to meet with him prior to Plaintiff's scheduled shift later that day.

**ANSWER:**

Defendant denies, except it admits that Supervisor Rick Holder requested Plaintiff to meet with

him at Defendant's office prior to the time of Plaintiff's scheduled shift.

**COMPLAINT ¶ 38:**

Before the meeting took place, however, Supervisor Rick called Plaintiff to terminate his employment for the purported reason of tardiness.

**ANSWER:**

Defendant denies, except it admits that Plaintiff never showed up for the meeting.

**COMPLAINT ¶ 39:**

In terminating Plaintiff's employment, Defendant bypassed its usual and customary practices and procedures which require that employees receive progressive discipline for tardiness, including verbal and written warnings, none of which Plaintiff received prior to his termination.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 40:**

On information and belief, similarly situated employees who did not engage in protected activity were not subjected to the adverse actions directed against Plaintiff.

**ANSWER:**

Defendant denies.

**COMPLAINT ¶ 41:**

Any reasons proffered by Defendant for terminating Plaintiff's employment are pretext for retaliating against Plaintiff because of his complaints of racial discrimination and harassment.

CHICAGO/#1763105.1

**ANSWER:**

Defendant denies.


**COMPLAINT ¶ 42:**

The aforementioned acts and omissions of Defendant constitute unlawful retaliation for Plaintiff's opposition to race discrimination and harassment, in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.

**ANSWER:**

Defendant denies.


**COMPLAINT ¶ 43:**

As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered damages, including but not limited to, lost and foregone wages and benefits, and physical and emotional harm.

**ANSWER:**

Defendant denies.

**ADDITIONAL DEFENSE**

On information and belief, Plaintiff has failed to properly mitigate any damages he may

claim against Defendant.

Dated: March 27, 2008                          Respectfully submitted,

                                                BLACK HORSE CARRIERS INC.



                                                By:  s/ Lawrence L. Summers
                                                        One of Its Attorneys

Lawrence L. Summers, Bar No. 02775093
Vedder Price P.C.
222 North LaSalle Street - Suite 2600
Chicago, IL  60601-1003
(312) 609-7500

CHICAGO/#1763105.1

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 27, 2008, a true and correct copy of the

foregoing **BLACK HORSE CARRIERS INC.'S ANSWER TO COMPLAINT** was submitted

by electronic filing with the Clerk of Court using the CM/ECF system which will automatically

send email notification of such filing to the following attorney(s) of record:

>      Lisa Kane, Esq.
>      Lisa Kane & Associates, P.C.
>      Attorney for Plaintiff
>      120 South LaSalle Street, Suite 1420
>      Chicago, IL  60603


                              s/ Lawrence L. Summers
                                  Lawrence L. Summers

CHICAGO/#1763105.1